# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SYLVESTER MILLER, )
)
             Petitioner, )
)
v. )   Civil Action No. 08-178-GMS
)
PERRY PHELPS, Warden, and )
ATTORNEY GENERAL OF )
THE STATE OF DELAWARE, )
)
             Respondents. )

---

Sylvester Miller. *Pro se* petitioner.

Kevin M. Carroll, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

---

## MEMORANDUM OPINION

_July 11_, 2011
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Sylvester Miller ("Miller"). (D.I. 7; D.I. 30) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court,

> Alicia Miller visited her stepmother in the summer of 2004 and informed her stepmother that her father, Sylvester Miler, had sexually abused her. Alicia's stepmother contacted the Florida police. The Florida Police asked Alicia to provide a handwritten statement of the events and contacted Delaware authorities. Delaware police then investigated, resulting in Miller's arrest and indictment.

> At Miller's trial, both Alicia and Anthony, Miller's son, testified against him. Alicia testified to six specific instances when her father raped or sexually abused her: (1) a time when her father forced her to have sexual intercourse the night before Christmas; (2) a time when Alicia's father forced her to have sexual intercourse and her brother opened the bedroom door; (3) a time when her father dragged her into his bedroom and forced her to perform oral sex; (4) the first time her father forced her to have anal sex; (5) the summer after she turned 14 and her father, again, forced her to have anal sex; and (6) a time when her father forced her to have sexual intercourse before she left for Florida.

> Anthony corroborated Alicia's testimony. Anthony saw his father enter Alicia's bedroom late at night and during those times he heard bedsprings "creaking" and Alicia saying "no" and "stop." Anthony also testified to an occasion when he walked into Alicia's bedroom and saw Miller under the sheets with Alicia. Finally, Anthony explained that his sister had told him about the abuse two years before the trial but he never mentioned anything because he was confused about what action he should take.

> Miller never testified, but the jury had the opportunity to view Miller's videotaped police interview. During the police interview, Miller denied all of Alicia's allegations. Despite Miller's repeated denials in the videotape and other evidence suggesting that Alicia and Anthony had motives to lie, the jury found Miller guilty of six counts of rape first degree and one count of continuous sexual abuse of a child.

1

*Miller v. State*, 893 A.2d 937, 941-42 (Del. 2006). The Superior Court sentenced Miller to a

mandatory term of fifteen (15) years at Level V for each first degree rape conviction, and to five

(5) years at Level V, suspended after two years, for the continuous sexual abuse of a child

conviction. Miller appealed, and the Delaware Supreme Court affirmed his convictions and

sentences. *See Miller v. State*, 893 A.2d 937 (Del. 2006).

In July 2006, Miller filed a *pro se* motion for post-conviction relief pursuant to Delaware

Superior Court Criminal Rule 61 ("Rule 61 motion"). The Delaware Superior Court denied the

Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Miller v. State*,

945 A.2d 594 (Table), 2008 WL 623236 (Del. Mar. 25, 2008).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

3

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are treated as technically exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). To establish a miscarriage of justice, the petitioner must demonstrate actual innocence,

4

not legal insufficiency, by presenting "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence " not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This new reliable evidence must make it more likely than not that "no reasonable juror would find [the petitoner] guilty by a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). In determining whether the Federal law is "clearly established," the focus is on Supreme Court holdings, rather than dicta, that were clearly established at the time of the pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (2010). Even a summary adjudication of a claim on the merits is entitled to § 2254(d) deferenc. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

When reviewing a § 2254 petition, a federal court must presume the state court's

5

determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Miller's voluminous and somewhat rambling petition[1] asserts fifty (50) claims. For ease of analysis, the court has divided the claims into the following categories.

Claims Presented On Direct Appeal:

(1) the trial judge abused his discretion by refusing to allow *voir dire* on whether the individual prospective jurors would give more weight to a police officer's testimony than that of other witnesses;

(2) the trial judge erred by refusing to instruct the jury on the lesser included offense of unlawful sexual contact;

(3) the trial judge abused his discretion by denying defense counsel's proposed "conduct of jury instruction" which focused on "not surrendering your opinion for the purpose of a verdict";

(4) the trial judge abused his discretion by denying Miller's motion *in limine* in which Miller sought to redact a portion of a videotaped police interview with Miller where the police officer made unsupported suggestions that Miller may have been unable to recall that he had sexually assaulted Alicia because he was using marijuana or abusing alcohol;

(5) the trial judge abused his discretion by denying Miller's motion for a mistrial when the victim gave an unresponsive answer to a prosecutor's question and made reference to an inadmissible earlier sexual assault;

---

[1]Miller filed an original petition (D.I. 1), and then two amended petitions (D.I. 7; D.I. 30). The court's use of the word "petition" refers to Miller's two amended petitions.

(6) the trial judge abused his discretion by admitting Alicia's handwritten statement describing the abuse;

(7) the trial judge abused his discretion by limiting the cross-examination of Alicia when he refused to allow defense counsel to ask Alicia questions about her relationship with Miller's girlfriend; and

(8) the trial judge unfairly commented on the evidence in his jury instruction when he linked the six counts of rape to specific "allegations" made by Alicia.

Claims Presented in Rule 61 Motion and on Post-Conviction Appeal:

(9) Miller was denied his right under the Vienna Convention to contact the Jamaican Consulate;

(10) his Miranda rights were violated;

(11) his civil and constitutional rights were violated;

(12) he was denied a copy of his warrant, affidavit, information, and police report;

(13) he was denied Rule 16 discovery prior to trial;

(14) defense counsel did not investigate or prepare for trial;

(15) defense counsel and the state denied him important information and evidence before trial;

(16) defense counsel refused to call the witnesses Miller requested;

(17) he was denied access to pretrial discovery and knowledge of court proceedings before the trial;

(18) he was denied access to the evidence and witnesses the State intended to use against him;

(19) the police and prison staff refused to let him call his family;

(20) he was denied DNA testing;

(21) he was denied a copy of his transcript and his right to represent himself on direct appeal;

(22) the trial court failed to promptly appoint counsel to represent him;

(23) counsel did not confer with him;

(24) counsel did not advise Miller of his rights and matters of defense;

(25) counsel failed to conduct investigate the people Miller knew, lived with, and worked with;

(26) counsel waived Miller's constitutional rights without Miller's knowledge or understanding;

(27) the trial judge was biased against Miller and defense counsel and accepted false information and false arrest date;

(28) his preliminary hearing date was violated;

(29) bail was excessive and without probable cause;

(30) the "8/24/2004 violation of Miller's constitutional and parental rights [was] without just cause, Miller should not bring his children into this country" (D.I. 7, Motion for Federal Counsel at B);

(31) trial court failed to reduce bail;

(32) trial court failed to dismiss the defective indictment;

(33) counsel violated Miller's constitutional rights by waiving arraignment;

(34) trial court denied Rule 16 discovery;

(35) he did not waive reading during his arraignment/bail hearing;

(36) defense counsel falsified a document and presented false evidence;

(37) an English translator was not provided;

(38) he did not intentionally relinquish any known constitutional rights;

(39) the trial judge was personally, judicially, and racially biased against Miller;

(40) his default was due to counsel's and the trial court's omissions;

(41) defense counsel provided ineffective assistance;

(42) the State failed to prove its case beyond a reasonable doubt;

(43) the police officers and State poisoned the victim's heart against Miller and presented misleading and false evidence to the jury;

(44) Fiona Riley should not have been permitted to testify because she was not the guardian of Miller's children and she had only been in the State of Delaware for two months;

(45) defense counsel did not present an orderly defense;

(46) defense counsel did not conduct a proper voir dire of the jury;

(47) defense counsel failed to provide a proper closing argument;

(48) defense counsel improperly cross-examined the State's witnesses;

(49) the entire indictment is false; and

(50) the Superior Court erred by failing to grant Miller's motion for trial transcripts that he filed during his Rule 61 proceeding (D.I. 30).

The Delaware Supreme Court denied Miller's eight appellate claims as meritless, and Miller did not raise those claims in his Rule 61 proceeding. As for Miller's Rule 61 motion, the Superior Court denied the witness credibility and ineffective assistance of counsel allegations as meritless, and denied the remaining claims either as procedurally defaulted under Rule 61(i)(3) or as formerly adjudicated under Rule 61(i)(4). Although the Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal, it held that the barred claims were all defaulted under Rule 61(i)(3) due to Miller's failure to present them on direct appeal, not barred under Rule 61(i)4 as previously adjudicated. In turn, the Delaware Supreme Court denied the "failure to provide transcripts" and ineffective assistance of counsel claims as meritless.

In its answer, the State asks the court to deny the eight claims asserted on direct appeal for either failing to satisfy § 2254(d) or because they fail to assert issues cognizable on federal habeas review. As for the claims presented on post-conviction appeal, the State argues that the

ineffective assistance of counsel claims should be denied for failing to satisfy

§ 2254(d), and that all the other claims (claims 9-13, 17-22, 27-32, 34, 35, 37-40, 42-44, and 49)

should be denied as procedurally barred. The State does not address Miller's claim that the

Superior Court violated his constitutional rights during his Rule 61 proceeding by failing to

provide him with free copies of his trial and sentencing transcripts.

## A. Procedurally Barred Claims

On post-conviction appeal, the Delaware Supreme Court denied claims 9-13, 17-22, 27-

32, 34, 35, 37-40, 42-44, and 49 as procedurally defaulted under Rul 61(i)(3). When, as here, the

last reasoned state court opinion explicitly imposes a procedural bar for a claim, a federal court

on habeas review will presume that the last decision did not silently disregard the bar and review

the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Consequently, although the Superior

Court reviewed some of Miller's Rule 61 claims on the merits, the court must focus on the

Delaware Supreme Court's decision.

By denying the aforementioned claims as procedurally barred, the Delaware Supreme

Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1989) that its

decision rested on state law grounds. This court has consistently held that Rule 61 is an

independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v.*

*Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D.

Del. Oct. 11, 2005). Thus, the court cannot review the merits of these procedurally defaulted

claims absent a showing of cause for the default, and prejudice resulting therefrom, or upon a

showing that a miscarriage of justice will occur if the claims are not reviewed.

Here, Miller attempts to establish cause by blaming appellate counsel for not raising his

10

numerous claims on direct appeal. Ineffective assistance of appellate counsel can constitute cause for a petitioner's procedural default when the petitioner presented the ineffective assistance allegation as an independent claim to the state court, and appellate counsel's assistance was "so ineffective as to rise to a constitutional deprivation" under *Strickland v. Washington*, 466 U.S. 668 (1984). *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Miller presented the same allegation regarding appellate counsel's failure to present the defaulted claims on direct appeal to the Superior Court during his Rule 61 proceeding in an attempt to establish cause for his default under Rule 61(i)(3). After summarily denying Miller's allegation regarding appellate counsel's performance and finding that Miller did not establish cause for his default, the Superior Court denied the claims as barred by Rule 61(i)(3). *Miller*, 2007 WL 3287943, at *4 & n.22. The Delaware Supreme Court summarily affirmed that judgment on post-conviction appeal. *Miller*, 2008 WL 623236, at *1-2. Because the Delaware Supreme Court's summary denial of the instant ineffective assistance allegation was on the merits,[2] counsel's failure to raise Miller's procedurally defaulted claims on direct appeal can constitute cause only if the Delaware Supreme Court's conclusion that such failure did not constitute ineffective assistance of counsel was contrary to, or an unreasonable application of, *Strickland*.

An attorney's decision about which issues to raise on appeal are strategic,[3] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). In his § 2254

---

[2]*See Richter*, 131 S.Ct. at 784-85.

[3]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

petition, Miller simply states that counsel failed to raise on appeal the claims Miller wanted him to raise. This conclusory allegation, however, does not establish ineffective assistance of counsel, because it fails to overcome the strong presumption that counsel's conduct fell within a range of reasonable professional assistance or demonstrate that a reasonable appellate strategy would have included presenting the claims identified by Miller. Additionally, Miller has failed to demonstrate a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's failure to raise these claims. As a result, the court concludes that the Delaware Supreme Court's denial of Miller's allegations regarding appellate counsel's performance in this respect was neither contrary to, nor an unreasonable application of, *Strickland.* Therefore, appellate counsel's performance does not constitute cause for Miller's default.

In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine cannot be applied to excuse Miller's default, because he has failed to provide any new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims 9-13, 17-22, 27-32, 34, 35, 37-40, 42-44, and 49 as procedurally barred.

### B. Ineffective Assistance of Counsel Claims

For the most part, Miller's ineffective assistance of counsel claims (claims 14-16, 23-26, 33, 36, 41 and 45-48) assert general and conclusory complaints about defense counsel's failure to raise objections during the trial, call witnesses, and investigate the facts. However, four of his more thorough arguments contained in those claims allege that defense counsel provided ineffective assistance by failing to: (1) call Miller's ex-wife and Alicia's Aunt Fiona to testify;

(2) provide Miller a copy of discovery; (3) object to the admission of a videotape during the prosecution's case or move to suppress Miller's statement in the video; and (4) review the pre-sentence investigation report with Miller. The Superior Court denied Miller's general allegations of attorney error and these four more specific ineffective assistance of counsel allegations as meritless, and the Delaware Supreme Court affirmed that decision. Given the Delaware Supreme Court's adjudication of Miller's complaints, the court can only grant habeas relief if the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claims were contrary to, or an unreasonable application of, clearly established federal law, or involved an unreasonable determination of facts in light of the evidence presented at trial.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and

leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court's decision is not contrary to clearly established federal law because the court analyzed Miller's ineffective assistance of counsel claims within the *Strickland* framework. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if Miller has satisfied the "unreasonableness" prong of the § 2254(d)(1) test. A state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Richter*, 131 S.Ct. at 788 (emphasis added)(internal citations omitted). When assessing the reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Richter*, 131 S.Ct. at 790 (internal citation omitted). "*Strickland* [] calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the

"likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when

viewing a state court's determination that a *Strickland* claim lacks merit through the lens of §

2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Id.* at 786. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

*Id.*

For the reasons set forth below, after reviewing Miller's ineffective assistance of counsel

claims through this "doubly deferential" lens, the court concludes that the Delaware Supreme

Court's denial of these claims involved a reasonable application of *Strickland*.

### 1. Failure to call Miller's ex-wife and the victim's aunt to testify

With respect to the performance prong of the *Strickland* test, the Superior Court

concluded that counsel's decision to not call Miller's ex-wife or the children's Aunt Fiona as trial

witnesses constituted reasonable trial strategy only after referring to counsel's Rule 61 affidavit.

Specifically, the Superior Court explained that

> [c]ounsel's affidavit notes that he discussed the possibility of [Miller's] ex-wife
> testifying, but concluded that she was an adverse witness who could be "highly
> detrimental" to Miller's defense. Thus, counsel's decision not to subpoena or call her as
> a witness was a tactical decision, and did not fall below an objective standard of
> reasonableness. The same analysis applies to Miller's claim that counsel failed to
> investigate his children's aunt [] as a defense witness. Counsel's affidavit demonstrates a
> thorough attempt to determine the substance of this testimony, and found her to be
> unhelpful and "highly adverse."

*Miller*, 2007 WL 3287943, at *3. The Delaware Supreme Court affirmed this decision, thereby

implicitly accepting the Superior Court's factual finding that counsel adequately investigated and

reasonably concluded that the ex-wife and aunt would provide adverse testimony. In this proceeding, Miller has not rebutted the presumption of correctness that has attached to the Delaware Supreme Court's factual finding with clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Therefore, the court concludes that Miller has failed to demonstrate that counsel's performance fell below an objectively reasonable standard.

Miller has also failed to demonstrate that he was prejudiced by counsel's actions. As explained by the Delaware Supreme Court during Miller's direct appeal,

> [t]he State presented substantial evidence that Miller raped and sexually abused his own daughter over a long period of time. Miller's natural daughter testified against him and his natural son corroborated her story. Miller provided evidence to suggest that both of his children were biased and had motives to lie. To resolve the case the jury simply needed to decide who was more credible, Miller's two children or Miller himself. The jury obviously accepted Alicia's story and Anthony's corroboration.

*Miller*, 892 A.2d at 950. Given the substantial likelihood that Aunt Fiona and Miller's ex-wife would only have provided adverse and unhelpful testimony that may actually have supported the testimony of Alicia and her brother, Miller cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for counsel's failure to call these two witnesses.

Based on the foregoing, the court concludes that Miller has failed to demonstrate that the Delaware State Courts' rejection of the instant claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S.Ct. at 786. The court also concludes that the Delaware Supreme Court's decision was based on a reasonable determination of the facts. Accordingly, the court will deny Miller's allegation that counsel's failure to call his ex-wife and Aunt Fiona as witnesses amounted to constitutionally ineffective assistance.

## 2. Failure to provide Miller with a copy of discovery

Miller complains that counsel failed to give him a copy of discovery. The Superior Court concluded that Miller's assertion did not provide a basis for relief because, even if true, "there is no obligation by rule or practice that requires counsel to provide copies of the documents to the defendant." *Miller*, 2007 WL 3287943, at *3. In reaching this decision, the Superior Court also referenced counsel's contention that he discussed and reviewed the discovery with Miller. *Id.* The Delaware Supreme Court affirmed the Superior Court's decision after determining that any such error did not prejudice Miller. *Miller*, 2008 WL 623236, at *2.

In this proceeding, Miller has not cited, and the court has not found, any authority indicating that counsel had a duty to provide him with hard copies of the discovery documents. Moreover, Miller's conclusory and mostly unintelligible statements regarding counsel's failure to provide such documents do not establish that defense counsel's conduct was objectively unreasonable or that the failure to provide discovery resulted in prejudice to him. Accordingly, the court concludes that the Delaware State Courts' denial of the instant claim does not warrant relief under § 2254(d).

### 3. Failure to object to the admission of a videotape during the prosecution's case or move to suppress Miller's statement in the video

Miller's complaint about counsel's failure to object to the admission of a videotape of Miller's police statement is also unavailing. As noted by the Delaware Superior Court,[1]

---

[1]Although the court's typical service order directs the State to supply counsel's Rule 61 affidavit when allegations of ineffective assistance are alleged in a § 2254 petition, and the State indicated that it had ordered the affidavits provided by Miller's trial counsel, the state court record actually filed by the State contains no such affidavit(s). (D.I. 21 at 17; D.I. 28) Fortunately, in this case, the absence of counsel's affidavit does not preclude or impede the court's review of Miller's claims, because the court relies on the Delaware State Courts' findings

counsel's Rule 61 affidavit described how he "discussed with [Miller] the possible usefulness of his statement to the police, which was equivocal, in part, but wherein [Miller] denied that he would ever commit the crimes." *Miller*, 2007 WL 3287943, at *3. Counsel explains that he strategically decided not to suppress the videotape because it provided the defense with an opportunity to present the jury with Miller's denial of the charges without requiring him to testify. *Id.*

The Superior Court independently determined that counsel's decision not to seek suppression of the tape was strategic and concluded that the decision benefitted Miller, because "it allowed the jury to see his denial of the charges without being subject to cross-examination." *Miller*, 2007 WL 3287943, at *3. The Superior Court then denied the instant ineffective assistance allegation for failing to satisfy the first prong of *Strickland*, and the Delaware Supreme Court affirmed that decision after holding that any alleged error on counsel's part also did not result in prejudice to Miller. *Id; Miller*, 2008 WL 623236, at *2.

Courts evaluating counsel's performance under the first prong of the *Strickland* standard must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. The presumption can be rebutted by showing that "the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Thomas v.*

---

of fact regarding counsel's assertions in said Rule 61 affidavit. The court is confident that the State will ensure the consistent production of existing Rule 61 affidavits from this point forward when producing the state court records for § 2254 proceedings involving ineffective assistance of counsel allegations.

*Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005).

In this proceeding, Miller's conclusory allegations fail to rebut the presumption that counsel's decision to not file a motion to suppress the tape was part of counsel's "sound trial strategy." Miller has also failed to demonstrate any prejudice caused by counsel's decision. For instance, defense counsel filed a motion *in limine* to redact a portion of the videotaped police interview where the questioning police officer asked Miller if the reason he had sex with his daughter may have been because he was either drunk or high on drugs and did not fully appreciate what he was doing. In the videotape, Miller vehemently denied the officer's inference. The trial judge denied the motion *in limine* after determining that the police officer's suggestions of alcohol or drug use to the point of memory loss were not prejudicial because they did not come from Miller and Miller denied them. On direct appeal, the Delaware Supreme Court affirmed Miller's convictions and sentences, and specifically held that the trial court's denial of the motion *in limine* did not deprive Miller of a fair trial. The Delaware Supreme Court explained that

> Miller has failed to articulate how the police officer's totally uncorroborated statements, that he flatly denied, would affect the jury's determination of his credibility in light of the balance of the evidence. Therefore, even [assuming, *arguendo*, that], the trial judge abused his discretion by refusing to redact references to criminal use of marijuana and alcohol abuse, Miller has failed to articulate why the jury's verdict would turn on that issue and prejudice him to the degree that we can conclude that he was denied a fair trial.

*Miller*, 893 A.2d at 950-51. Given the Delaware State Court's denial of counsel's request to redact only a portion of the videotape, Miller cannot demonstrate a reasonable probability that a motion to suppress the entire videotape would have been granted. As a result, Miller cannot demonstrate a reasonable probability that the result of his trial would have been different if defense counsel filed a motion to suppress the entire videotape. Accordingly, the court concludes

that this allegation does not warrant relief under § 2254(d).

### 4. Failure to review the pre-sentence investigation report with Miller

Miller contends that counsel failed to read and review the presentence report with him prior to sentencing. The Superior Court provided three reasons for denying this allegation under the prejudice prong of the *Strickland* standard. First, Miller failed to identify any incorrect information or how, even if correct, the outcome of his sentencing hearing would have been different had counsel reviewed the report with him. Second, the "rules of the [Superior] Court only required the presentence report to be provided to counsel, and while obviously counsel should discuss it with his client, there is no rule mandating such conduct." *Miller*, 2007 WL 3287943, at *4. And finally, the presentence report had "little, if any, bearing on the overall sentence" because of the "amount of mandatory incarceration required by the statutes under which" Miller was convicted. *Id.* In this proceeding, Miller has not alleged that the presentence report was incorrect, nor has he demonstrated a reasonable probability that his sentence would have been different but for counsel's failure to review the presentence report with him. Therefore, the court concludes that the Delaware Supreme Court reasonably applied S*trickland* in affirming the Superior Court's denial of this claim.

### 5. General failure to object, call witnesses, and investigate the facts

Finally, after reviewing the trial record and defense counsel's Rule 61 affidavit, the Delaware State Courts held that Miller's general complaints about counsel's failure to object, call certain witness, and investigate the facts did not entitle him to relief because they did not rebut the strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. In this proceeding, Miller has merely re-alleged the same general errors without

20

providing any further substantiation to demonstrate either deficiency or prejudice. Therefore, the court concludes that the Delaware State Courts did not unreasonably apply *Strickland* in denying these complaints.

### C. Claims Two, Three, Seven, and Eight: Non-cognizable Issues

It is well-settled that the "[a]dmissibility of evidence is a state law issue,"[5] and "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Additionally, in order to satisfy the "fair presentation" component of the exhaustion doctrine, a habeas petitioner wishing to claim that "an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment [] must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995)(holding that a claim of "miscarriage of justice" does not qualify as asserting federal due process claim). The Third Circuit Court of Appeals has clarified this rule, specifically holding that a petitioner does not invoke the federal due process guarantee by "argu[ing] that the admission of evidence denied him a 'fair trial.'" *Keller v. Larkins*, 251 F.3d 413-15 (3d Cir. 2001).

In this proceeding, claims two, three, seven, and eight each contain one sentence stating that the evidentiary and other errors asserted therein violated Miller's due process right to a fair trial. However, the thrust of these claims is that the alleged errors violated Delaware statutory, evidentiary, and/or constitutional law, not that they amounted to federal constitutional violations. The court finds support for this conclusion because the manner in which Miller presented these claims to the Delaware Supreme Court on direct appeal is the same manner in which he presents

---

[5]*Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

the claims here,[6] and the Delaware Supreme Court viewed the claims as asserting errors under Delaware law rather than as federal due process claims. Accordingly, the court denies claims two, three, seven, and eight for failing to present issues cognizable on federal habeas review.

### D. Claims One, Four, Five, Six Do Not Warrant Relief Under § 2254(d)

#### 1. Claim One: Denial of *Voir Dire*

Miller contends that the trial court erred by refusing to allow *voir dire* on whether individual prospective jurors would give more weight to a police officer's testimony than they would give to the testimony provided by other witnesses. He alleges that "the failure to allow this *voir dire* coupled with the police officer's improper questions on the videotape exacerbated the unfairness of the trial and violated [his] due process rights." *Miller*, 893A.2d at 943. When Miller raised this issue on direct appeal, the Delaware Supreme Court accepted, *arguendo*, his contention that the jury venire should have been questioned about its ability to impartially evaluate the credibility of police officer testimony. However, after considering Miller's claim in light of the factors set forth in *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979) and *Brown v. United States*, 338 F.2d 543 (D.C. Cir. 1964), the Delaware Supreme Court held that any error was harmless beyond a reasonable doubt.

It is now well-settled that a habeas court assessing the prejudicial impact of a constitutional error in a state-court criminal trial must apply the harmless-error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), which requires determining if the error "actually prejudiced" the defendant because it had a substantial and injurious effect or

---

[6]In fact, in raising these claims here, Miller merely quotes the arguments verbatim from his opening brief on direct appeal.

influence in determining the jury's verdict. *Fry v. Pliler*, 127 S.Ct. 2321, 2327 (2007)(explaining that the *Brecht* harmless error standard of review subsumes the standards announced in AEDPA). A court applying the *Brecht* harmless error standard must permit the state trial court's verdict to stand if, after reviewing the record, the court is sure that the error had no or little influence on the jury. *Adamson v. Cathel*, 633 F.3d 248, 260 (3d Cir. 2011). However, the court must conclude that the error was not harmless if the court has "'grave doubt' about whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.*

In this case, the record does not leave the court in "grave doubt" as to whether the *voir dire* error had a substantial and injurious effect on the jury's verdict. As an initial matter, the court is not persuaded that Miller's general complaints about the injustice he has suffered at the hands of the state courts satisfies any threshold requirement for establishing actual prejudice under the *Brecht* standard. More significantly, however, given the ancillary role the police officer's testimony played in Miller's trial, the court concludes that any *voir dire* error was harmless under *Brecht*, because it had little, if any, influence on the jury verdict. As explained by the Delaware Supreme Court:

> First, the police officer's testimony was not central to the State's case. Rather, the case rested primarily on Alicia's testimony corroborated by the testimony of her brother. Second, the credibility of the police officer was not really an issue at trial; instead, consistent with the above, the credibility determinations related largely to the defendant's videotaped statement and Alicia's and Anthony's trial testimony. Third, the trial judge used the jury questionnaire to determine whether any prospective juror was related to or friends with a law enforcement officer. This ultimately resulted in the trial judge excusing a prospective juror whose husband was a police officer [when, after asking "if there was a conflict between the testimony of a lay witness and an officer, would you give the benefit to the officer," the prospective juror said she would].[7] Fourth, to the extent any corroboration was necessary – and it arguably was not – Alicia's testimony was

---

[7]*Miller*, 893 A.2d at 943.

sufficiently corroborated by Anthony's testimony. Examining all of the factors here, we conclude that even if there was error, it was harmless.

*Miller*, 893 A.2d at 947. Accordingly, the court will deny this claim as meritless.

### 2. Claim Four: Denial of Redaction Request

During Miller's trial, the State wanted to introduce the detective's entire videotaped interview of Miller. Defense counsel objected and sought to redact the detective's unsupported suggestions that Miller may have been unable to recall that he had sexually assaulted Alicia because he was using marijuana or abusing alcohol, arguing that the references were prejudicial and irrelevant because Miller was from Jamaica and many people have a common prejudice that Jamaicans smoke marijuana. The prosecutor summarized the videotaped interview to the trial court as follows:

> she – she's saying maybe he might have forgotten about this, maybe he might have been intoxicated and her line of questioning is maybe you came home, you were drunk, maybe you were high and you got – maybe you were drunk, maybe you smoked some pot and you got in bed and you didn't realize what you were doing.

*Miller*, 893 A.2d at 950. The trial judge viewed the videotape himself and then denied defense counsel's redaction request, explaining that the police officer's suggestions of alcohol or drug use were not prejudicial because they did not come from Miller and Miller flatly denied them. *Miller*, 893 A.2d at 950. The entire videotape was admitted as evidence.

On direct appeal to the Delaware Supreme Court, Miller argued that the trial judge violated his right to a fair trial by denying the motion *in limine,* because the detective's unsubstantiated assertion was highly inflammatory and prejudicial. The Delaware Supreme Court assumed, *arguendo*, that the trial judge abused his discretion by denying the motion *in limine*, but held that this error did not constitute "significant prejudice so as to have denied Miller

24

a fair trial." *Id.* at 950-51. The Delaware Supreme Court explained that

> [t]he State presented substantial evidence that Miller raped and sexually abused
> his own daughter over a long period of time. Miller's natural daughter testified
> against him and his natural son corroborated her story. Miller provided evidence
> to suggest that both of his children were biased and had motives to lie. To resolve
> the case the jury simply needed to decide who was more credible, Miller's two
> children or Miller himself. The jury obviously accepted Alicia's story and
> Anthony's corroboration. Miller has failed to articulate how the police officer's
> totally uncorroborated statements, that he flatly denied, would affect the jury's
> determination of his credibility in light of the balance of the evidence. Therefore,
> even if the trial judge abused his discretion by refusing to redact references to
> criminal use of marijuana and alcohol abuse, Miller has failed to articulate why
> the jury's verdict would turn on that issue and prejudice him to the degree that we
> can conclude that he was denied a fair trial.

*Miller*, 823 A.2d at 950-51.

Now, in this proceeding, Miller asserts the same argument that the trial judge violated his

right to a fair trial by denying his redaction request. Because this alleged due process violation is

premised on a state evidentiary error, Miller can only prevail by demonstrating that the

evidentiary error was so pervasive that he was denied a fundamentally fair trial. *Keller*, 251 F.3d

at 413.

Miller, however, has failed to satisfy this burden, because he merely describes why the

trial judge's denial of the motion *in limine* violated Delaware caselaw without addressing how

that denial rendered his trial fundamentally unfair. For instance, Miller contends that the trial

court violated Delaware precedent by denying the redaction motion without first engaging in any

relevance analysis or examining the purpose behind introducing the challenged portion of the

videotape as evidence. Miller also argues that the trial court failed to consider if the prosecutor

could muster any permissible reasons for admitting the evidence under Delaware Rule of

Evidence 404. (D.I. 28, Appellant's Op. Br., No. 312, 2005, at 20-21) When viewed in context,

it cannot be said that the denial of Miller's motion *in limine* rendered the trial fundamentally

unfair in light of the fact that the few references to drug or alcohol intoxication during the

interrogation originated with the police officer and were vehemently denied by Miller.

Therefore, the court concludes that the Delaware Supreme Court's decision that the instant error

did not deprive Miller of a fair trial was neither contrary to, nor an unreasonable application of,

Supreme Court precedent.

Additionally, as the State correctly argues, even if the error could be considered violative

of Miller's due process right to a fair trial, Miller's contentions of impropriety fail to allege

and/or prove actual prejudice under the *Brecht* standard. In other words, any error in failing to

redact the challenged portion of the videotape was harmless because it did not have a substantial

and injurious effect on the judgment. Accordingly, the court will deny claim four.

### 3. Claim Five: Denial of Motion for Mistrial

During direct examination, Alicia started to reference an earlier incident in Jamaica where

Miller sexually assaulted someone else. The defense asked for a mistrial, which the trial judge

denied after explaining that,

> I think what happened, so the record can reflect this, she began making a
> statement, I interrupted her and she may have completed it but it was over my
> "Counsel, I need to see you at sidebar," so I am not convinced that the jury would
> have clearly heard her whole response and I'm concerned that if I try to cure it by
> asking them to strike it, I may be highlighting what I'm trying not to have them –
> what I'm going to generally say is that the last question and answer doesn't have
> any relevance and is stricken and I'll ask you to go on . . .

*Miller*, 893 A.2d at 952.

In claim five, Miller argues that the trial court erred in denying his motion for mistrial

because the judge's uncertainty about whether the jury heard Alicia's statement provided the

26

"type of factual nexus that required a mistrial for manifest necessity." (D.I. 28, Appellant's Op.

Br., No. 312,2005 at 26)   The Delaware Supreme Court rejected this same argument on direct

appeal, finding that "neither defense counsel nor the prosecutor were immediately aware of any

prejudice resulting from Alicia's answer . . . if the attorney's did not note the potential for

prejudice, it is highly unlikely that the jury would have recognized the potential for prejudice."

*Miller,* 893 A.2d at 952.  The Delaware Supreme Court ultimately held that the trial judge did not

abuse his discretion by denying Miller's motion for a mistrial because the judge removed any

potential for prejudice by striking the question and answer from the record and the unresponsive

answer did not undermine Miller's right to a fair trial.  *Id.*

When a habeas court is presented with a challenge to a state court's decision regarding a

request for a mistrial,

> [the] question is not whether the trial judge should have declared a mistrial.  It is not even
> whether it was abuse of discretion for her to have done so . . . The question under
> AEDPA is instead is whether the determination of the [state court] that there was no
> abuse of discretion was an "unreasonable application of . . . clearly established law."

*Renico v. Lett,* __ U.S. __, 130 S.Ct. 1855, 1862 (2010).  Trial judges have broad discretion in

deciding whether to grant a mistrial, and "may declare a mistrial whenever, in their opinion,

taking all the circumstances into consideration, there is a 'manifest necessity' for doing so, []but

the power ought to be with the greatest caution, under urgent circumstances, and for very plain

and obvious causes."  *Id.* at 1863 (2010)(internal citations omitted).  There are no hard and fast

rules regarding what conditions constitute a "manifest necessity"; rather, the determination must

be based on the particular facts and circumstances of the case.  *Russo v. Superior Ct. of New

Jersey,* 483 F.2d 7, 13 (3d Cir. 1973);  *Crawford v. Fenton,* 646 F.2d 810, 817 (3d Cir. 1981).  In

cases involving improper witness statements, the issue is whether the jury was prevented from

arriving at a fair and impartial verdict. *See, e.g, Arizona v. Washington*, 434 U.S. 497, 511-12

(1978). An improper witness statement only rises to the level of due process violation if, when

viewed in the context of the entire trial, the statement is of sufficient significance so as to deny

the petitioner of a fair trial. *See Greer v. Miller*, 483 U.S. 756, 765 (1987)(applied in the context

of prosecutorial misconduct). The Third Circuit has identified three factors guiding this inquiry:

(1) whether the witness' remarks were pronounced and persistent, creating a likelihood of

misleading and prejudicing the jury; (2) the strength of the other evidence; and (3) the curative

action taken by the court. *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993). *See Taylor

v. State*, 690 A.2d 933 (Del. 1997). Delaware trial courts consider similar factors when

determining whether a witness' outburst has prejudiced the defendant such that a mistrial is

warranted: (1) the nature, persistency, and frequency of the emotional display; (2) whether the

outburst created a likelihood that the jury would be misled or prejudiced; (3) the closeness of the

case; and (4) the curative or mitigating action taken by the trial judge. *Id.* at 935.

Here, the "abuse of discretion" standard applied by the Delaware Supreme Court in

affirming the Superior Court's denial of Miller's motion for a mistrial was consistent with the

applicable Supreme Court precedent. *See Miller*, 893 A.2d at 953. Therefore, the Delaware

Supreme Court's decision was not contrary to clearly established Federal law.

Additionally, Miller has failed to demonstrate that the Delaware Supreme Court's

decision "resulted in an outcome that cannot reasonably be justified under existing Supreme

Court precedent." *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999).

To begin, given Miller's failure to provide clear and convincing evidence to the contrary, the

court accepts as correct the Delaware Supreme Court's factual finding that the jury either did not

hear or did not perceive Alicia's fleeting reference to an earlier sexual assault on someone else in Jamaica. At best, then, any prejudice arising from Alicia's reference was speculative. Considering that juries are presumed to follow the instructions given by the trial court,[8] the Delaware Supreme Court reasonably concluded that the trial judge's action of striking the State's question and Alicia's answer from the record was sufficient to cure any potential for prejudice resulting from Alicia's fleeting comment. Moreover, Alicia's testimony regarding Miller's sexual assaults on her and her brother's corroboration of those events provided sufficient evidence of Miller's guilt. Thus, after reviewing Miller's allegation in context with the all of aforementioned circumstances, the court concludes that the Delaware Supreme Court reasonably applied Supreme Court precedent in holding that the trial's fairness was not compromised by Alicia's fleeting reference to the prior Jamaican assault.

Given the record before it, the court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable determination of facts. Accordingly, the court will deny this claim for failing to satisfy § 2254(d).

### 4. Claim Six: Improper Admission of Alicia's Handwritten Statement

Miller's next argument alleges that trial court erred in admitting into evidence Alicia's handwritten narrative of the abuse she had suffered at her father's hand written that the behest of the Florida police. To the extent Miller contends that the admission of this narrative constituted an error under Del. Code Ann. tit. 11, § 3507, the claim asserts an error of state law that is not cognizable in this proceeding.

---

[8]*See Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987)(collecting cases where the Supreme Court has presumed that a jury would follow its instructions to disregard evidence or use evidence for a limited purpose).

To the extent Miller contends that the admission of the statement violated his right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), the argument fails to warrant relief under § 2254(d). As articulated by the Supreme Court in *Crawford*, "when a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 68. In this case, *Crawford* simply is not implicated because Alicia testified during Miller's trial and defense counsel cross-examined her about her earlier written statement. Therefore, the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, and also was not based on an unreasonable determination of the facts. Accordingly, the court will deny this claim for failing to satisfy the requirements of § 2254(d).

### 5. Claim Fifty: Denial of Motion for Trial Transcripts

Now, in his final claim, Miller contends that the Superior Court violated his constitutional rights by denying his post-conviction request for free trial and sentencing transcripts. It appears that Miller received his trial and sentencing transcripts during his direct appeal, but he contends that he was unable to access them during his post-conviction proceeding because they were in the possession of his trial counsel. Miller then filed a motion for free transcripts in the Superior Court, which that court denied because Miller "failed to set forth a particularized need for the material [] requested or why it would be relevant to any pending litigation which he has filed." (D.I. 7, Order, *State v. Miller*, ID No. 0408012099) Citing *United States v. MacCollom*, 426 U.S. 317, 325-26 (1976) for the proposition that there is no right to free transcripts with respect to a post-conviction proceeding, the Delaware Supreme Court affirmed the Superior Court's denial of Miller's request for transcripts at the State's expense

because he failed to show just cause. *Miller*, 2008 WL 623236, at *2.

Now, in his final claim, Miller contends that the Superior Court violated his constitutional rights by denying his post-conviction request for free trial and sentencing transcripts. For the following reasons, the court concludes that Miller's argument is unavailing.

While it is well-settled that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," *Britt v. North Carolina*, 404 U.S. 226, 227 (1971), it is unclear whether an indigent state defendant has a constitutional right to free transcripts in order to prepare a collateral challenge to his conviction. *See Wade v. Wilson,* 396 U.S. 282, 286 (1970)(declining to decide whether the "Constitution requires that a State furnish an indigent state prisoner free of cost a trial transcript to aid him to prepare a petition for collateral relief"); *MacCollom*, 426 U.S. 317 (1976)(§ 2255 movant is not entitled to free transcript as a matter of right)*; Ortiz v. Snyder*, 2002 WL 511517, at *7 (D. Del. Apr. 2, 2002). Assuming an indigent defendant has such a right, at a minimum he must demonstrate a particularized need for the transcript. *See MacCollom*, 426 U.S. at 326 (finding that, in a § 2255 proceeding, an indigent petitioner will be provided with a publicly funded transcript upon demonstrating that his § 2255 claim is not frivolous and the transcript is needed to decide the issue presented). Courts consider two factors in determining whether a transcript is needed: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Britt*, 404 U.S. at 227. Courts may also consider whether the defendant waived a prior opportunity to obtain a free transcript. *See Bounds v. Smith,* 430 U.S. 817, 823 n.8 (1977).

In the instant case, the Delaware Supreme Court articulated and applied a standard paralleling the appropriate analysis under the aforementioned Supreme Court precedent. Thus, the court concludes that the Delaware Supreme Court's was not contrary to clearly established Federal law.

The Delaware Supreme Court's decision regarding Miller's transcript motion also did not involve an unreasonable application of Supreme Court precedent. Despite allegedly not having a copy of the requested transcripts, Miller was able to present numerous claims to the Delaware state courts in his post-conviction proceeding. Further, as previously explained, those claims were either procedurally barred or meritless, meaning that the transcripts would not have helped Miller prove already baseless claims. Thus, the court concludes that the Delaware Supreme Court's denial of Miller's transcript claim does not provide a basis for federal habeas relief under § 2254(d)(1).

**IV. CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Miller's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

32

## V. CONCLUSION

For the reasons stated, Miller's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

.